ALICE M. SPENGLER, Respondent, v. KAUFMAN & WILKINSON, Garnishees of LOUIS P. SPENGLER, Appellants.

**St. Louis Court of Appeals, November 10, 1891.**

1. **Executions: EXEMPTIONS: HEAD OF A FAMILY.** While a man, who lives with and supports his widowed mother and his sisters, is ordinarily deemed to be the head of a family within the purview of the statute providing for exemptions from the levy of process on property, still he is not to be so considered, when the claim of exemption is invoked against an execution issued under a judgment which his wife has obtained against him for maintenance, since the allowance of this claim in such a case would be a perversion of the purposes of the statute.

2. **Fraud: SUFFICIENCY OF EVIDENCE.** *Held*, that, while the verdict of a jury on an issue of fraud cannot be predicated on mere conjecture or suspicion, still very slight circumstances will warrant the submission of the issue to the jury in a case like the one at bar—it being one wherein a husband, in order to defeat the levy of an execution issued on a judgment which his wife had obtained against him for maintenance, required his employers to pay him his wages in advance, and his employers acquiesced in his demand with notice of its purpose, but claimed that they did so because they had need for his services, and feared that he would otherwise quit their employ, as he had threatened to do.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

*Rassieur & Schnurmacher* and *W. C. & J. C. Jones,* for appellants.

(1) The court erred in excluding evidence offered by the garnishees to prove that the defendant was the head of a family. They were not, in so doing, seeking to claim any personal exemption for defendant. Under the statute, if he was the head of a family, they were

exempt from the process of garnishment, and were not liable for the payments made to defendant after garnishment. R. S., sec. 5220 ; *Davis v. Meredith*, 48 Mo. 263 ; *Marigold v. Dooley*, 89 Mo. 111. ( 2 ) An agreement to pay wages, weekly or monthly, in advance, if made in good faith, is valid, and, if the payments are in fact made as agreed upon, the employer cannot be made liable in garnishment proceedings. *Reinhart v. Soap Co.*, 33 Mo. App. 24 ; Wade on Attach., sec. 473, p. 295 ; *Archer v. Bank*, 88 Ala. 249 ; *Alexander v. Pollock & Co.*, 72 Ala. 137 ; *Callaghan v. Mfg. Co.*, 119 Mass. 173 ; *Feeter v. Williams*, 3 B. Mon. 562. ( 3 ) There was no evidence in this case from which the jury could determine or even infer that the agreement to pay defendant's wages in advance was entered into by garnishees with a fraudulent intent, or to aid defendant in such an intent. All the evidence presented was to the one effect, that the garnishees needed defendant's services, and that they yielded to his demand rather than lose him as an employe. This they had a legal right to do, and, in so doing, in no way injured plaintiff. Had they declined to make the agreement, defendant would have quit their employ, and plaintiff would have been none the richer. There was no evidence to support a verdict, and the court should have taken the case from the jury. For the same reason this court should set aside the judgment entered upon such verdict. *Polack v. Hanauer*, 26 Mo. App. 261 ; *Moore v. Railroad*, 28 Mo. App. 622 ; *Klostermann v. Kage*, 39 Mo. App. 60 ; *Garesche v. MacDonald*, 103 Mo. 1.

*Ford Smith*, for respondent.

( 1 ) The question of fraud is one for the jury. There was evidence to sustain the verdict. The jury is the sole judge of the weight of evidence, and its finding will not be disturbed on appeal. *Chubbuck v. Railroad*, 77 Mo. 591, 594 ; *Reinhart v. Soap Co.*, 33 Mo.

App. 24, 27; *Hopkins to use v. Seivert*, 58 Mo. 201, 202; *Earl v. Hart*, 89 Mo. 263, 270; *State v. Jackson*, 99 Mo. 60, 61; *Oglebay v. Corby*, 96 Mo. 285; *Hill v. Scott*, 38 Mo. App. 370; *Rosecrans v. Railroad*, 83 Mo. 678, 682; *State v. Hall*, 85·Mo. 669, 673; *Dulaney v. Rogers*, 64 Mo. 201, 205; *Sexton v. Anderson*, 95 Mo. 373; *Frederick v. Allgaier*, 88 Mo. 598, 602, 603. (2) The testimony that Spengler was living with his mother and sisters was properly excluded. It did not tend to prove that Spengler, as against this plaintiff, was the head of a family. Nor was it admissible under the pleadings. *Spengler v. Kauffman & Wilkinson*, 43 Mo. App. 5.

BIGGS, J.—This is a garnishment under execution. On the trial the jury found that the garnishees were indebted to the defendant in the execution in the sum of $785.65. The amount due the plaintiff under the execution was $518.60, and this, the court ordered the garnishees to pay into court. They failed to do this, and thereupon the court entered a judgment against them for that amount. From that judgment they have appealed.

The counterpart of this proceeding was before this court once before. *Spengler v. Kaufman*, 43 Mo. App. 5. In the opinion in that case the reply and denial are set forth, and a full statement made of the facts and circumstances out of which the litigation arose. The present garnishment is based on a subsequent execution issued upon the same judgment, but the proceedings at the trial were substantially the same as in the former case. Whatever matters of difference there were will be now noticed.

In the former opinion we held that the plaintiff's denial was not broad enough to squarely put in issue the good faith of the agreement between the defendant in the execution and the garnishees, under which the wages of the defendant were to be paid in advance. In

the present proceeding we think that objection has been obviated. The plaintiff's denial contains among other averments the following:

"And plaintiff avers, and states the fact to be, that she is the wife of said defendant, Louis P. Spengler; that she was married to said Spengler in the month of October, 1887; that in the month of January, A. D. 1888, said defendant Spengler deserted and abandoned this plaintiff and refused to live with or support her, and since said time has refused to live with or support her, and has not lived with, or contributed to the support of, this plaintiff from the time of said abandonment until the present time; that in the month of December, 1888, in this court, she obtained judgment against said defendant, Louis P. Spengler, for her support and maintenance; that, by said judgment against said defendant, Louis P. Spengler, it was adjudged and decreed that said Spengler pay to this plaintiff as and for her support and maintenance the sum of $25 per month, the first payment of $25 to be due and payable under said judgment on the fifteenth day of December, 1888, and a like sum of $25 to be due and payable thereunder on the fifteenth of each and every month thereafter; that said Spengler has paid nothing under or on account of said judgment; that said defendant, Louis P. Spengler, is, and ever since the first day of February, A. D. 1889, has been, in the employment of said garnishee as bookkeeper and collector at a salary of $75 per month; that in the month of April, 1889, under an execution issued from this court in her favor and against said defendant, Louis P. Spengler, under the judgment aforesaid, she caused a process of garnishment returnable to the June term, 1889, of this court to be served upon said garnishee, and has caused garnishments to be served upon said garnishee, under executions issued under said judgment, returnable to each term of this court, between said June term, 1889, and the term of court to which the garnishment herein is

returnable; that all of said garnishments are still pending in this court and undetermined; and plaintiff states that the agreement entered into between said defendant and said garnishee, and set up in said garnishee's answer, to pay said defendant his salary in advance was made and entered into after the service of the process of garnishment aforesaid upon said garnishee in the month of April, 1889, and was made and entered into by said defendant Spengler with the fraudulent intent and purpose to defeat said garnishment, and with the intent and purpose to cheat and defraud this plaintiff out of her just claim against him, and to fraudulently place his property and salary and money out of the reach of the process of this court, and to fraudulently prevent her from collecting her said judgment against him, and to embarrass, hinder, delay and defraud this plaintiff in the collection of her said judgment and debt from him; that said garnishee entered into said agreement with said defendant after the service of the process of garnishment upon it as aforesaid, and that, at the time it entered into said agreement with said defendant to pay him his wages in advance, said garnishee knew that plaintiff had recovered said judgment against said defendant, and that the same was for her support and maintenance, and knew at the time of entering into said agreement with said Spengler that said Spengler sought and entered into said agreement with the fraudulent intent and purpose aforesaid, and entered into said agreement with said Spengler and agreed to pay him his salary in advance to aid and assist him, and for the purpose of aiding and assisting him to carry out his said fraudulent intent and purpose, and that said garnishee entered into said agreement with the same fraudulent intent and purpose to cheat and defraud this plaintiff and to fraudulently prevent her from collecting her said claim and judgment against said Spengler, and to fraudulently defeat said garnishment and the process of this court,

and to embarrass, hinder, delay and defraud this plaintiff in the collection of her said judgment and debt from him, and to fraudulently place the property, salary and money of said Spengler out of the reach of this plaintiff and out of the reach of the process of this court."

One of the defenses in the first proceeding, and upon which the garnishees now insist, was, that the contract provided for the monthly payment of the salary in advance ; that they had complied therewith, and that they were not indebted to the defendant for wages in any amount subject to garnishment for the reason that he was the head of a family. This defense involves the right of Spengler to claim his statutory exemptions where his wife is seeking to enforce a judgment against him for her maintenance.

In the first case we declined to pass on the question, because there was no evidence that the defendant was the head of a family, other than as the husband of the plaintiff. In the present proceeding the garnishees offered proof to the effect that the defendant, his widowed mother, and unmarried sisters were living together, and that the wages of the defendant were applied to, and constituted the only means of, their support. The court excluded this evidence, and upon this ruling of the court is based the appellants' first assignment of error.

I. Our statute ( R. S. 1889, sec. 5220 ) exempts certain persons from liability as garnishees. The section referred to contains the following clause : "Nor shall any person be charged as garnishee on account of wages due from him to a defendant in his employ for the last thirty days' service, provided such employe is the head of a family, and a resident of this state."

It is the settled law of this state that the relation of husband and wife, or father and child, need not exist to constitute a family, or to constitute the managing and responsible person of a household, the head of a family, within the meaning of our exemption laws.

In the case of *Wade v. Jones*, 20 Mo. 75, the party claiming the exemptions had his widowed sister and her children living with him. The sister kept house for him, and he provided and supported the family. The court held that he was the head of a family. In the case of *Duncan v. Frank*, 8 Mo. App. 286, this court decided that an older brother, who, with his elder sister, kept house for his younger brothers and sisters, was the head of a family. In *Nash v. Norment*, 5 Mo. App. 545, this court also decided that, where a married woman had been abandoned by her husband, and she is supporting her child, she must be considered the head of a family within the meaning of the execution law.

But in these cases, as well as others which we have examined, the contests were between ordinary debtors and the householder or head of the family. Here we have a different case. The plaintiff seeks by legal process to compel her husband to support her, as he is legally bound to do. If the appellant's construction of the statute is to prevail, then its enforcement against the plaintiff becomes the means of oppression, rather than of protection. This would entirely subvert the law, and defeat the intention of the legislature. The defendant's obligation to support his mother and sisters is a moral one only, and he is to be commended for so doing ; but his obligation to support his wife rests on legal, as well as moral, grounds, which we think makes the obligation a paramount one. As to ordinary creditors the statute would protect the fund for the benefit of the mother and sisters, but not as to the claims of the wife for maintenance. It would be very strange, indeed, if the defendant could shield himself under the exemption statute, when his wife was seeking to compel him to support her, to secure which was one of the chief objects of the law. We will rule this assignment against the appellants.

II. It is next insisted that there was no evidence, from which the jury could determine that the agreement to pay the defendant's wages in advance was entered into by the garnishees with a fraudulent intent to defeat the plaintiff in the collection of her judgment. We understand that the legality of this agreement, and that the appellants will be protected in the payment of wages thereunder, are conceded, provided the contract was made in *good faith*. Therefore, the *bona fides* of the transaction is the only matter in dispute. On that issue the jury was instructed that, to entitle the plaintiff to a verdict, they must believe and find from the evidence that Spengler demanded that the garnishees should pay his salary in advance for the purpose of defrauding the plaintiff out of her claim against him, and for the purpose of preventing her from subjecting his wages to the payment of her said claim, and that this purpose was known to the garnishees at the time they made the agreement to pay him his wages in advance, *and that the garnishees entered into said agreement to assist him therein.*"

It must be conceded that the instruction presented the issue to the jury in a way quite favorable to the appellants, possibly more so than the law warranted. It will be observed that the jurors were told that knowledge by the defendants of a fraudulent purpose by Spengler was not sufficient, but that, to render them liable for the money paid, the jury must find that they entered into the agreement for the purpose of aiding Spengler in his fraudulent designs.

The evidence leaves no doubt concerning the purpose of Spengler. His sole object was to defeat the enforcement of the plaintiff's judgment. Nor can it be said that the defendants were not fully advised of this purpose. Therefore, the only question is, was there any substantial evidence that the defendants participated in the fraud. The plaintiff introduced Kaufman as a witness. He knew nothing personally about the making.

of the contract. He was informed of it by Wilkinson, and ratified it. Wilkinson made the contract with Spengler, and the plaintiff read in evidence the notes of his testimony taken by a stenographer on the first trial. Wilkinson testified that, after the service of the first garnishment, Spengler demanded his wages in advance, and threatened, in case of non-compliance, to quit work; that he was a very valuable man, and that, rather than that the firm should lose his services, he agreed to pay him his salary monthly in advance, and that he did not do this to aid Spengler to defeat the enforcement of the plaintiff's judgment. It is conceded by the appellants' counsel that the jury was not bound to believe their client's protestations of innocence of any fraud, even though he testified at the instance of his adversary, if there were other facts and circumstances which would justify a contrary conclusion. Now, it is quite true that the verdict of a jury on an issue of fraud cannot be predicated on mere conjecture or suspicion ; but, in a case like the one which we have here, very slight circumstances would be sufficient to authorize the jury to find that the contract was entered into to embarrass creditors. *Reinhart v. Soap Co.*, 33 Mo. App. 24 ; *Fay v. Smith*, 25 Vt. 610.

The following are the salient facts as disclosed by the record : That Wilkinson and Spengler had been close friends for many years ; that, at Spengler's marriage, Wilkinson acted as groomsman ; that, in February, 1889, Spengler was employed by the appellants, who were then in the lumber trade, to keep their books at a monthly salary of $75 ; that, at the time, Spengler and his wife were living apart, and her suit for maintenance was then pending ; that, in April, 1889, an execution was issued on the plaintiff's judgment in the suit for maintenance and the appellants were summoned as garnishees ; that, when the first garnishment was served, Wilkinson told Spengler "that he did not like this garnishment business and that he must protect himself ;"

that he ( Spengler ) said he would quit work, unless his salary was paid in advance ; that, at the time, Wilkinson was in very bad health, and the business of the firm was such that Spengler, who was a very competent man, could not well be spared ; that, rather than be deprived of Spengler's services, the appellants agreed to pay his wages in advance; that afterwards garnishments were regularly served on the appellants for each succeeding term of the circuit court, and that, on the first day of January, 1890, Spengler's salary was advanced to $100 per month.

Now upon this state of facts a jury of ordinary intelligence might have reasoned in this way : That, if Wilkinson had not been controlled by a feeling of friendship for Spengler, and a desire to aid him in defeating the enforcement of the plaintiff's judgment, common business prudence would have suggested to him that it was better to discharge Spengler, however valuable his services might have been, or whatever might have been the condition of the firm's business, rather than involve his firm in costly litigation. And to strengthen this position the jurors might have argued that, at the time when Spengler's salary was increased, the appellants, if they had had only their own interests in view, would have insisted that this increase should be paid to the plaintiff, thereby relieving themselves of other garnishments. Or the jurors might have considered the statement made by Wilkinson to Spengler to the effect, that Spengler must protect himself against the garnishment, as a suggestion that he, Wilkinson, was ready to aid him in doing so. Such a line of thought or process of reasoning could not, in our opinion, be said to rest solely on conjecture or suspicion. It finds some warrant in the circumstances of the case. We will, therefore, rule this assignment likewise against the appellants.

III.   Objection is made to the plaintiff's first instruction. If we rightly understand the nature and

extent of the objection, what we have already said disposes of it adversely to the appellants. With the concurrence of the other judges, the judgment of the circuit court will be affirmed. It is so ordered.