JNO. E. MOSBY et al., Respondents, v. McKEE, ZOOK & WHITEFORD COMMISSION COMPANY, Appellants.

Kansas City Court of Appeals, January 20, 1902.

1. **Trial Practice:** EVIDENCE: PEREMPTORY INSTRUCTION: RULE AND EXCEPTION. A peremptory instruction to find for the plaintiff should not be given unless the defendant admits all the constitutive facts or they are established by documentary evidence which he is estopped to deny; but this rule does not apply where there is no evidence tending to prove the defenses pleaded and there is no dispute as to the facts entitling plaintiff to recover.

2. **Principal and Agent:** EVIDENCE: EXISTENCE OF AGENCY. Direct evidence is not required to establish an agency or its nature and existence, but the jury may infer these from circumstances or the practice and course of business and the unauthorized act of one may bind another on the principle of estoppel.

3. ———: ———: ———: JURY. Evidence reviewed and held sufficient to send to the jury the question of agency.

4. **Evidence:** CIRCUMSTANCES: PRESUMPTION: JURY. While a single circumstance may have little strength in itself, yet fitting in with other circumstances the whole may supply, on common principles of induction, the presumption of the most important facts and this process of induction is within the exclusive province of the jury.

5. **Conspiracy:** FRAUD: CIRCUMSTANTIAL EVIDENCE: JURY. Although fraud can not be predicated on mere conjecture, still very slight circumstances will warrant the submission of an issue involving it to the jury—especially if it may be inferred from all the facts and circumstances.

6. ———: ———: ———: OBJECTION. Where circumstantial evidence must be resorted to, objections to admissibility are not favored and the widest latitude must be allowed.

7. ———: EVIDENCE: CIRCUMSTANCES: DECLARATIONS. The essence of conspiracy is concert of action and each conspirator is a

virtual agent of the others and where there is some evidence, though circumstantial, of a combination, the declarations of the several conspirators are admissible.

8. ——: EVIDENCE: JURY. The evidence is reviewed and held sufficient to send to the jury the question of conspiracy and to admit in evidence the declaration of the conspirators.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Wood-son,* Judge.

REVERSED AND REMANDED.

*Johnson, Rusk & Stringfellow* for appellants.

(1) Before a court is authorized to give a peremptory instruction to the jury, it must appear, that conceding the truth of all the evidence admitted or wrongly excluded favoring the contention of the party demanding submission of the case to the jury and giving such party the benefit of every reasonable inference to be deduced therefrom, still all fair minds would find that the fact necessary to be shown is not established. Baird v. Railroad, 146 Mo. 265; Kattelman v. Fire Ass'n, 79 Mo. App. 447; Roe v. Annan, 80 Mo. App. 198; Keown v. Railroad, 141 Mo. 86; Young v. Webb City, 150 Mo. 333; Bank v. Simpson, 152 Mo. 638. (2) It is the duty of the trial court in passing upon a demurrer to the evidence (and the same rule applies here), to make every inference of fact in favor of the party offering the evidence, which the evidence warrants and which the jury might with any propriety make. Wilson v. Board of Education, 63 Mo. 137; Noeninger v. Vogt, 88 Mo. 589; Rine v. Railroad, 100 Mo. 228. (3) And the court is not at liberty to make inferences of fact in favor of the demurrant to countervail or overthrow either presumptions of law or inferences of fact existing in favor of the other party. Buesching v. Gas Light Co., 73 Mo. 219. (4) Although fraud can not be predicated on mere conjecture, still

very slight circumstances will warrant the submission of the issue of fraud to the jury. Spengler v. Kaufman, Garnishee, 46 Mo. App. 644; Hopkins v. Sievert, 58 Mo. 201; Ross v. Crutsinger, 7 Mo. 245; Wait on Fraud. Con., sec. 224; Bump on Fraud. Con., p. 582. Where an inference of fraud can be drawn from all the facts and circumstances in evidence, the question of fraud should be submitted to the jury. State to use v. Mason, 112 Mo. 374; Castle v. Bullard, 23 How. (U. S.) 172. (5) Whenever the necessity arises for a resort to circumstantial evidence, objections to testimony on the ground of irrelevancy are not favored. Castle v. Bullard, 23 How. (U. S.) 172. The widest latitude should be allowed. Mankeimer v. Harrington, 20 Mo. App. 297; Erfort v. Consalus, 47 Mo. 209; Lincoln v. Claflin, 7 Wall. 132, 138; Wait on Fraud. Con., sec. 282.

*H. K. White, Culver & Phillip* and *Charles Swindall* for respondents.

(1) It would have been error for the court to have given an instruction to the jury which was not supported by any testimony. Thrasher v. Greene Co., 105 Mo. 244; Grafton Mfg. Co. v. Troll, 69 Mo. App. 475; Jones v. Grossman, 59 Mo. App. 195; Gorham v. Railroad, 113 Mo. 408; Harrison v. White, 56 Mo. App. 175; Moore v. Hawk, 57 Mo. App. 495; Chouteau v. Searcy, 8 Mo. 733; Franz v. Hilderbrand, 45 Mo. 121; White v. Chancy, 20 Mo. App. 389; Stone v. Hunt, 114 Mo. 66; Bean v. Railroad, 20 Mo. App. 641. (2) By reference to respondent's statement, and from the record, it will be seen that there was no evidence admitted by the lower court to support the theory of "conspiracy" between Mosby and Biggs. Fraud is never to be presumed, and while it need not be established by direct or positive testimony, but may be proven by facts and circumstances, yet it must be proven in some way. Funkhouser v. Lay, 78 Mo. 458; Chandler v.

Fleeman, 50 Mo. 239; Thrasher v. Greene Co., 105 Mo. 244; Hardin v. Phelps, 51 Mo. 332. (3) If any of the mass of evidence excluded was improperly excluded, it devolves upon appellant to point out what particular evidence should have been received and why the court erred in rejecting it, otherwise the error is waived. McGarry v. Railway, 36 Mo. App. 345; Martin, Admr. v. Fox, 40 Mo. App. 664; Honeycutt v. Railway, 40 Mo. App. 674; Schultz v. Moon, 33 Mo. App. 329. (4) The Court did not err in rejecting the testimony. It was all hearsay. (5) The acts, statements and admissions of one are not admissible against another alleged conspirator, unless there is some competent evidence that a conspiracy exists. And it is for the court to determine when the evidence of combination is sufficient for this purpose. State v. Daubert, 42 Mo. 239; Hart v. Hicks, 129 Mo. 105; Williams v. Casebeer, 53 Mo. App. 644; Hart y. Hopson, 52 Mo. App. 177, loc. cit. 186; Holliday v. Jackson, 30 Mo. App. 263; Exchange Bank v. Russell, 50 Mo. 531; Bank v. Morris, 125 Mo. 350; Bank v. Leyser, 116 Mo. 51.

SMITH, P. J.—Action in trover. The petition in substance alleges that the defendant, an incorporated live stock commission company, doing business at the St. Joseph Stock Yards, converted to its own use six carloads of cattle, of which the plaintiffs were the owners, etc.

The answer, after a general denial, alleged: (1) That the defendants received said cattle for sale from· plaintiffs' authorized agent and were handled by it and the proceeds thereof paid to plaintiffs, through their agent; and (2) that plaintiff, John E. Mosby, and one Biggs, conspired to cheat and defraud this defendant by shipping to Saint Joseph, in this State, a certain lot of cattle, which said cattle then belonged to said plaintiff Mosby and Biggs, or one or the other of them, it being the purpose and design of said conspiracy that said Biggs should come to Saint Joseph with said cattle and there

dispose of them and then abscond, and that afterwards Mosby should claim that the cattle belonged to him and that said Biggs had no authority to dispose of them and should claim and recover damages for their conversion. That pursuant to said conspiracy, said Biggs did bring said cattle to Saint Joseph and dispose of them through defendant as commission merchant, which was in the line of defendant's business at Saint Joseph at that time, and that said Biggs, pursuant to said conspiracy, afterwards absconded himself in aid of said plaintiff's claim for said cattle.

The replication was a general denial. There was a trial and at the conclusion of the evidence the court gave to the jury a peremptory instruction to find for the plaintiff. Judgment went accordingly, and defendant appealed. The error assigned by the defendant for a reversal of judgment, is the action of the court in the giving of the said instruction.

I.  The general rule is that such an instruction ought not to be given unless the other party admits all the constitutive facts, or such facts have been established by documentary evidence which he is estopped to deny. This rule is, however, subject to the exception stated in Bank v. Haniline, 67 Mo. App. 483, and approved in the later case of Brewery Co. v. Lindsay, 72 Mo. App. 591. But where there is no evidence tending to prove any one of the defenses pleaded, and there is no dispute as to the facts entitling plaintiff to a recovery, such an instruction may be properly given. Hoter v. Lange, 80 Mo. App. 234.

The question now is, whether or not there is any substantial evidence in the record before us which tends to prove either one of the two defenses pleaded by the answer. As to the first of these, it is to be observed that it does not require direct evidence to establish an agency; for like any other fact, it may be established by circumstances, the conduct of the parties and the relations previously existing between them. Hull v. Jones, 69 Mo. 587; Mitchum v. Dunlap, 98 Mo. 418;

Werth v. Ollis, 61 Mo. App. 401. And the nature and extent of the authority of an agent need not be established by positive evidence; the triers of the fact are at liberty to infer it from circumstances, or the practice and course of business. And a party may be bound by the unauthorized act of another on the principle of estoppel, as where he has placed such other in a position as to his property, which was calculated to deceive others dealing with such person as apparent agent in reference thereto. Hoppe v. Saylor, 53 Mo. App. 4, and cases there cited.

The agency of Biggs is very clearly established by the evidence. It is in effect conceded that after the cattle had been driven from Woodward to Jet, a town eighteen miles from Pond Creek—the latter being more than one hundred miles from the former, where plaintiff resided—that plaintiff placed Biggs in the absolute possession and control of them. The plaintiff then disappeared and did not see the cattle again for about two months, and until a few days before they were shipped to defendant by Biggs. During the time of the plaintiff's absence, Biggs handled and controlled the cattle in his own way. He abandoned the contract which plaintiff had made for grazing and feeding, and made a contract therefor with another person at another and different place to where the cattle were removed. He purchased feed, paid pasturage, hired help, and the like. The plaintiff and Biggs were shown to have passed themselves off as half-brothers and to have sustained for years the closest and most intimate relations, as that of partner, employee and employer, etc. When Biggs was arrested for theft, the plaintiff mortgaged his little home to keep him out of jail. The former it seems, enjoyed the fullest confidence of the latter. Besides this, a few days before the cattle were shipped by Biggs, the plaintiff came to where they were being pastured and fed. He then endeavored to make a sale and had persons come and look at them with the view of purchasing. Shortly after this plaintiff told Millegan,

who had been employed to feed and care for the cattle, that in case "we" make a sale of them, one of us—referring to himself and Biggs—would be back. Plaintiff told another witness, Gibson, that there would be some one there to look at the calves and if "we" do not sell them "we" are going to ship them. There is also evidence tending to show that just before the cattle were shipped, plaintiff let Biggs have one hundred and seventy-five dollars, and that immediately thereafter Biggs deposited in a bank one hundred and fifty dollars which amount was checked out by him in payment of the expenses incurred in moving the cattle to Pond Creek, from where they were shipped to defendant.

If the facts and circumstances to which we have just adverted are sufficient to justify the deduction of the inference that Biggs was the agent of the plaintiff, and that as such agent he was authorized to sell the cattle and receive the purchase price, then it is clear that said peremptory instruction should not have been given. A single circumstance may have little strength, and of itself afford no foundation, but when joined to many more of the same nature, all fitting each other, and having the same relation, the whole united may form an arch strong enough to support a presumption of the most important facts. Frost v. Brown, 2 Bay. (S. C.) 133. Presumptions of fact are but inferences drawn from other facts and circumstances in the case, and should be made upon common principles of induction. O'Gara v. Eisenlohr, 38 N. Y. 298. But the presumption of the existence of one fact from the existence of another, that is, the process of ascertaining one fact from the proof of another fact, is within the exclusive province of the jury. 1 Greenleaf Ev., sec. 48; Lawson on Presumptive Ev., 641. How can it be said that there was no substantial evidence tending to prove the defense of agency, or that the case was not one for the jury, rather than the court. The rule is well settled that if there is any substantial evidence to

support the defenses pleaded by the answer, the case should go to the jury.

II.   And as to the evidence adduced in support of the other defense pleaded, that is, that alleging conspiracy entered into between plaintiff and Biggs to defraud the defendants, it is to be further observed, that it is the well-recognized law that although fraud can not be predicated on mere conjecture, still very slight circumstances will warrant the submission of an issue involving it to the jury.   Hopkins v. Sievert, 58 Mo. 201; Spengler v. Kaufman, 46 Mo. App. 644; Ross v. Crutsinger, 7 Mo. 245; Wait on Fraud. Con. (3 Ed.), sec. 283; Bump on Fraud. Con., p. 582.   It has been in effect ruled that the issue of fraud should be submitted to the jury where it (fraud) can be inferred from all the facts and circumstances in evidence.   State v. Mason, 112 Mo. 374; Castle v. Bullard, 23 How. (U. S.) 172.   And whenever the necessity arises for a resort to circumstantial evidence, objections to testimony on the ground of fraud are not favored.   The widest latitude should be allowed in such cases.   Wait on Fraud, sec. 282; Manheimer v. Harrington, 20 Mo. App. 297; Erfort v. Consalus, 47 Mo. 209; Lincoln v. Clafin, 7 Wall. 132.

The essence of a conspiracy is a concert or combination to defraud, which results in damage to the party defrauded. The law treats the case among conspirators as a virtual agency of a limited nature, arising *ex maleficio;* and, hence, upon the charge of a combination to defraud, the declarations of each if the parties to such combination relating thereto, are evidence against the others though made in the absence of the latter.   But the party must, as a rule, first prove the fraudulent combination to deceive and defraud him.   Slight evidence of collusion or concert will suffice to let in the declaration of one of the parties as evidence against all.   But there must be some evidence of the combination.   This may be inferred from the relation of the parties and the circumstances sur-

rounding them.    Bigelow on Fraud, sec. 6; Moncreiff on Fraud and Misrep., 255.

In the light of the principles of law to which we have just adverted, let us turn to the evidence of conspiracy to defraud. The various facts and circumstances which the evidence tends to prove are so numerous and varied that it is impractical to here allude to them all.    In assembling the facts and circumstances which are relied on to support the inference of the collusion, in addition to those referred to in the preceding paragraph, there are others not without significance appearing in the record which may be considered; such, for instance, as that the plaintiff, just before the shipment of the cattle, was, according to his own confession, very impecunious, having no money except $450 which had been loaned him by the Galena Bank for the purpose of purchasing feed for the cattle.    But he and Biggs were not only pecuniarily insolvent, but were in bad repute for honesty in the communities where they lived. There was a first and second mortgage on the cattle to secure debts amounting to about $5,000.    The debt secured by the first would fall due April 17, and that of the latter was past due.

On March 11, 1890, the plaintiff appeared at Jet where he, as has been stated, made efforts to sell the cattle, and in that connection declared that if he did not then sell them he would ship them.    It was on that day (March 11) Biggs by letter made inquiries of the defendant respecting the price of cattle, and about a week thereafter shipped six carloads of the cattle to St. Joseph where they were sold for him by defendant. Biggs did not remain in St. Joseph to receive the proceeds arising from the sale.    He returned to Pond Creek.    As Biggs had referred defendant to the Walton Bank at Pond Creek, the latter sent the proceeds to that bank for him.    The bank held the money for four days and until it could make certain investigations in respect to the title of the cattle. Biggs

made no objection to this. After the receipt of the money, he apparently retired to the deepest seclusion.

It was shown that one Ray Coffee had been employed by plaintiff in caring for the cattle, and that about a week after Biggs had shipped them, he (Coffee) wrote to the plaintiff at Woodward that the cattle were doing well. Coffee at the time of writing this letter was not even with the remnant of the cattle remaining. This letter was asked for at the trial but not produced by the plaintiff. Coffee after this made the plaintiff's house his home when unemployed. According to plaintiff's own testimony, he received two letters at Woodward from Biggs after the cattle were shipped and to which he severally replied. The plaintiff's letters were not taken out of the postoffice at Jet, to which place they were directed. On finding this out he called for and received them himself so that he was in possession of the four letters so written. He promised defendant to produce these letters at the trial, but failed and refused to do so.

About the seventeenth of April, the plaintiff turned up at Jet where he made inquiry about the cattle. This was the first time he had been seen there since the eleventh of March. If he made any effort to secure the arrest of Biggs, it was, according to his own testimony, of the feeblest kind. Nor does it appear that he made any formal complaint of the Biggs' theft to the Oklahoma Live Stock Association, of which he was a member. Presumptions of fact are but conclusions drawn from particular circumstances. They are such as are found by experience to be usually consequent upon or coincident with the facts presumed, and either do not arise or are rebutted if they do not correspond with, or are not adequate to account for the circumstances actually proved.

What other deduction can an intelligent mind honestly make from the various circumstances and incidents to which we have adverted than that there was a conspiracy or combination between plaintiff and Biggs to defraud the defendant.

In view of all the facts it is inconceivable that there could have been no concert of action—no confederation or understanding between them to defraud defendant. It is difficult to understand why the plaintiff allowed Coffee to make his home with him after the writing of the deceitful letter to him about the cattle, unless that letter was a part of the fraudulent scheme and so understood by plaintiff. Such a letter, if written, would have ordinarily had the effect to allow Biggs to sell the cattle and get away with the proceeds. If Biggs, in selling the cattle, was defrauding plaintiff, then Coffee was an active participant in the fraud. The exceedingly friendly relation existing between plaintiff and Coffee after the fraud is inconsistent with the former's claim of innocence of a knowledge of the purpose of Biggs to dispose of the cattle in the way he did. It is surpassingly strange that if there was nothing of an inculpatory character in the written correspondence between plaintiff and Biggs, why he did not produce such correspondence at the trial, instead of destroying it. What other inference can be drawn from the conduct of plaintiff in this regard than that such correspondence disclosed facts of a damaging character. An honest man, under the circumstances, would have produced it with alacrity. From the long absence of plaintiff from the place where the cattle were, under the peculiar circumstances, the inference may well be drawn that such absence was to afford Biggs ample opportunity to carry out his part of the fraudulent undertaking. The deliberation practiced by Biggs in the sale of the cattle and collection of the proceeds is not to be overlooked as tending to show that he had no occasion to apprehend any interference from plaintiff. The fact that plaintiff was insolvent, in need of money and had no equity in the cattle, tends to prove a motive for the participation by him in the fraudulent disposition of the cattle. Nor was his character such as to give rise to any rebutting presumption.

To our minds, it is clear that the facts disclosed by the evidence were sufficient to justify the inference of the import-

ant fact of a conspiracy, and therefore it necessarily follows that the declarations of the parties were admissible, subject to the rules of law to which we have hereinbefore referred.

We are satisfied that both of the issues made by the pleadings should, under the evidence, have been submitted to the jury, and, therefore, the peremptory instruction should not have been given.

As to whether or not the defendant, after being introduced by plaintiff as a witness in its behalf, could be impeached by plaintiff, we need only refer to what was said in the recent case of Crieghton v. Modern Woodmen, decided by us at the present term.

The judgment must be reversed and cause remanded. All concur.