MARY MAAG, Respondent, v. MILTON F. WILLIAMS, Garnishee of JOHN MAAG, Appellant.

**St. Louis Court of Appeals, February 25, 1902.**

**Divorce: GARNISHMENT: EXEMPTION: HEAD OF FAMILY.** In the case at bar, plaintiff obtained a decree of divorce from her then husband and by the decree he was required to pay to plaintiff twenty dollars on the first Monday of each month beginning on the second day of July, 1900, for the support of their infant child. He defaulted in the payment of this support money and an execution was issued against him to enforce its collection and defendant was garnished and brought into court to answer interrogatories. *Held*, that as the trial court found that plaintiff's husband was legally bound to support his child by his first marriage, he was the head of a family within the meaning of sections 3159 and 3152, Revised Statutes 1899, and his weekly wages were exempt from garnishment.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

REVERSED.

STATEMENT OF THE CASE.

Mary Maag obtained a decree of divorce from her then husband, John Maag, in the circuit court of the city of St. Louis. By the decree John was required to pay to Mary twenty dollars on the first Monday of each month beginning on the second day of July, 1900, for the support of their infant child.

John defaulted in the payment of this support money and an execution was issued against him to enforce its collection, and defendant Williams was garnished and brought into court to answer interrogations. Growing out of the interrogations propounded to him and his answers thereto, issues were made up by the following denial thereto, to-wit:

"Now at this day comes plaintiff Mary Maag, and denies each and every answer filed by Milton F. Williams, garnishee of John Maag, and for cause of action against said garnishee plaintiff says:

"That on the first day of December, 1900, said Milton F. Williams was served with notice of garnishment; that at and for at least two weeks prior to the last-mentioned date defendant John Maag was a workman in the employ of said garnishee and under contract with said garnishee was entitled to a weekly wage amounting to $16.50, and that at the date of said service of garnishment said Williams was indebted to said defendant in the sum of thirty-three dollars.

"That after the service of said garnishment as aforesaid, defendant continued in the employ of said garnishee under the contract above alleged, and continued so without interruption until the second day of February, 1901, and is still, at the time of filing this denial, in the employ of said garnishee.

"That during all of said time said defendant has been earning and said garnishee has become indebted to him in the sum of sixteen and one-half dollars for each and every week of said period.

"Wherefore, plaintiff prays judgment against said Milton F. Williams, garnishee, in the sum of one hundred dollars with interest from December 1, 1900, and for her costs." and the following reply thereto, to-wit:

"Comes now the garnishee in the above-entitled cause, and for reply to plaintiff's denial of the garnishee's answer, says:

"That he admits that defendant Maag was in his employ at the time of the service of the garnishment herein, to-wit, December 1, 1900, but each and every other allegation in said denial contained this garnishee denies, generally.

"And for further reply, garnishee states that at the time of the service of the garnishment herein, and for some time prior thereto, said defendant John Maag was in garnishee's employ at a wage of twenty-seven and one-half cents per hour for the time actually employed, the wages being agreed to be paid weekly on Saturday of every week. That during the week ending December 1, 1900, the date of service of garnishment, said Maag had earned in said employment the sum of $14.85. That at the time of the service of said garnishment defendant was, and ever since has been, the head of a family. That said defendant has two minor children, one a boy, aged six years, and the other a girl, aged about two years. That the boy is a child of said defendant by a former marriage, and the latter a child of his marriage with the plaintiff herein. That at the time of said garnishment and ever since said defendant has supported his said minor son and is still supporting him. That at the time of the service of said garnishment and ever since defendant was and has been a resident of the State of Missouri. That on the twenty-sixth day of March, 1901, said defendant married again, and is now and has been ever since said twenty-sixth day of March, 1901, supporting his wife as well as his said minor son. That as such head of a family the wages of defendant for the period of thirty days were, and are, exempt from execution and are not subject to garnishment.

"That on the first day of December this garnishee paid said defendant for the wages earned by him during the preceding week the sum of $14.84. That from said first day of December, 1900, to the date of filing the answer to the interrogatories herein, February 23, 1901, defendant earned in his said employment with garnishee the following amounts:

Maag v. Williams.

"For the week ending December 8, 1900......$15 65
"For the week ending December 15, 1900..... 15 65
"For the week ending December 22, 1900..... 15 65
"For the week ending December 29, 1900..... 13 05
"For the week ending January 5, 1901....... 13 05
"For the week ending January 12, 1901...... 15 65
"For the week ending January 19, 1901...... 15 65
"For the week ending January 26, 1901...... 16 05
"For the week ending February 2, 1901...... 15 65
"For the week ending February 9, 1901...... 15 65
"For the week ending February 16, 1901..... 15 65
"For the week ending February 23, 1901..... 15 65

"That upon the last day of every one of said weeks this garnishee paid to said defendant in full the amount earned by defendant during said week.

"This garnishee further says, that at the time of the service of the garnishment herein said defendant was indebted to him in the sum of $25 for cash loaned defendant by garnishee on May 31, 1900. That on January 31, 1901, garnishee paid for and on account of the defendant, and at his instance and request, the sum of $25, and on the ninth day of March, 1901, the sum of $47.75 making a total indebtedness from defendant to garnishee for cash loaned to and paid for defendant, of $99.75, upon which amount, on February 13, 1901, defendant paid garnishee the sum of $25, and on March 9, 1901, the sum of $20, leaving due garnishee from defendant a balance of $54.75.

"Wherefore, this garnishee says that he was not at the time of the service of garnishment herein, nor has he been since, nor is he now, in anywise indebted to defendant.

"And having fully replied he prays to be hence dismissed with an allowance for answering," and the following rejoiner to-wit:

"Now comes plaintiff and denies each and every allegation of new matter in garnishee's reply herein contained."

The issues were submitted to the court. The judgment in the divorce case was read in evidence and the execution and the following agreed statement of facts.

"That defendant married in 1895, of which marriage a son was born; that, subsequently, his wife obtained a decree of divorce from him, with custody of the child and a judgment for alimony; that afterwards defendant married plaintiff and a child was born of that marriage; in May, 1900, she also obtained a divorce from defendant, with custody of her child and the judgment for alimony hereinbefore recited; that on March 26, 1901, defendant remarried his first wife. The garnishment was served on December 1, 1900, and the answer filed February 23, 1901, during which time defendant was unmarried, but under legal obligation to support the child of the first marriage. That the only question in the case to be decided is, whether the fact that defendant had a child by a former marriage constitutes him the head of a family and entitled to claim exemption in this proceeding. That the amount of wages earned by defendant, as set out in the garnishee's reply, is correct, but as a subsequent garnishment in the same matter was served on January 22, 1901, it was agreed that this garnishment should cover only wages up to and including January 19, 1901, which amount to $119.20. It was likewise admitted that the indebtedness from defendant to garnishee, as stated in garnishee's reply, is correct."

The court found for plaintiff in the sum of ninety-four dollars and twenty cents, filing a written memorandum of its findings, in which, after finding the defendant's legal obligation to support the child of the first marriage constituted defendant the head of a family, it yet held that he was not entitled to claim his wages exempt as against plaintiff's judgment for support of the child.

After an unavailing motion for a new trial Williams, the garnishee, appealed.

Maag v. Williams.

*Lambert E. Walther* for appellant.

(1)  The trial court found as a fact that John Maag was the head of a family and entitled to exemptions against ordinary creditors.  In the garnishee's answer he set up that Maag was the head of a family and that Maag was supporting the child of the first marriage.  Plaintiff offered no evidence to overcome that allegation, and it must, therefore, stand as proven.  Walker v. Fairbanks, 55 Mo. App. 478; Holton v. Railroad, 50 Mo. 151.  (2)  The garnishment proceeding is an action at law, and the case having been submitted to the court sitting as a jury, the facts upon which it bases its judgment are uncontrovertible in the appellate court.  This court has only power to review the law declared by the trial court and must assume the facts to be as that court found them. Nelson v. Railroad, 66 Mo. App. 647.

*Jno. B. Dempsey* for respondent.

(1)  Under the opinion of the court in this cause the defendant, John Maag, is not entitled to exemptions, for he is not the head of a family.  The fact that defendant remarried his first wife on March 26, 1901, does not constitute him a head of a family as to the judgment herein; for, according to the admissions of counsel, defendant's remarriage occurred after the answer was filed, and was not in issue in this cause. The garnishment period covered wages earned from December 1 to February 23, antedating his remarriage by one month and three days.  Berry v. Ewing, 91 Mo. 395.  (2)  If respondent's child is still a member of the defendant's family, it is, with the child of the first marriage, the beneficiary of the exemption statute, as was the wife in Spengler v. Kaufman. And to allow defendant to claim exemptions against its claim for maintenance "would defeat the very object of the statute."

BLAND, P. J.—It was found by the trial court that John Maag was legally bound to support his child by his first marriage and for this reason was the head of a family within the meaning of sections 3159 and 3162, Revised Statutes 1899. On the appeal it is assumed by appellant and admitted by respondent, in their respective briefs, that John Maag was the head of a family at the date of the service of the process of garnishment. Whether or not John Maag was the head of a family within the meaning of the sections of the statutes, supra, is not open for discussion on this appeal and we will assume for the purpose of the decision of the case that he was the head of a family. Supposing, then, Maag to have been the head of a family when the process of garnishment was served on appellant, was his weekly wages exempt from execution by section 3162, supra? The learned trial judge, following Spengler v. Kaufman & Wilkinson, 46 Mo. App. 644, held that Maag was not entitled to invoke the protection of said section against the judgment for the support of his minor child. In the Spengler case the wife had obtained a judgment against her husband for support and defendants were summoned as garnishees. The above statute of exemptions was interposed as a defense. On appeal to this court is was held that Spengler could not claim the benefit of the statute to defeat the collection of his wife's judgment. His wife was the only other member of Spengler's family and there is some apparent justice in the ruling, but suppose Speng-ler had had minor children dependent upon his wages for their daily bread; the case would present altogether a different aspect and the apparent justice of the decision would be trans-formed into a palpable injustice. The Spengler decision en-grafts upon the statutes of exemptions an exception to the protection they were designed to secure to every head of a family, and is judicial legislation, and is opposed to the decis-ion of the Supreme Court in the case of Biffle v. Pullam, 114 Mo. 50, wherein it was held that, "A homestead was exempt

Maag v. Williams.

from the levy of an ordinary execution issued on a judgment for alimony rendered in favor of the wife in a divorce suit in the same manner and to the same extent as in the case of execution on any other judgment."

The legal and moral obligation of Maag to support his child was not taken away by the award of its custody to its mother, but the judgment for its support, rendered in the divorce suit in favor of the mother, is like any other judgment; it established a legal liability, to accrue from month to month, and awarded execution for its collection, from time to time as the debt accrued.   The statute of exemptions makes no exceptions whatever in favor of such a judgment and its collection on execution must be enforced, if at all, like any other judgment.   Biffle v. Pullam, supra.

Respondent cites State v. Parsons, 115 N. C. 730, as holding that a judgment in favor of the mother is not, in form, a debt. .  The Parsons case was a proceeding under the bastardy law of North Carolina.   The allowance for the support of the bastard child was made payable to the mother. The court said it might have been made payable to the overseer of the poor as the agent of the State.   The State had a direct interest in enforcing the payment and it was held that the State would not abdicate its right to enforce payment for the reason that the money was made payable to the mother instead of to the overseer of the poor.

The State has no interest in the enforcement of the judgment in the case at bar.   It is not a party to the record and the case has no analogy whatever to the Parsons case.

On the admission both by his brief and on the oral argument of respondent's counsel that John Maag was the head of a family within the meaning of the exemption statutes, we reverse the judgment. *Barclay* and *Goode, JJ.*, concur.